UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RAMON COSME,

                                    Plaintiff,

                                                                           <u>DECISION AND ORDER</u>

                                                                                04-CV-6629L

                v.

SERGEANT FURMAN, et al.,

                                    Defendants.
_____

**PROCEDURAL BACKGROUND**

Plaintiff, Ramon Cosme ("Cosme"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), commenced this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of the Eighth Amendment. Plaintiff claims that on April 9, 2004, while he was confined at Southport Correctional Facility, he was subjected to excessive force when he was beaten by several DOCS employees and he was denied appropriate medical care afterwards.

On November 7, 2008, this Court issued a decision and order granting defendants' motion for summary judgment, denying plaintiff's motion for summary judgment, and dismissing plaintiff's complaint. Plaintiff appealed, and on April 26, 2010, the Court of Appeals for the Second Circuit vacated this Court's judgment, and remanded the case to this Court for further proceedings to determine whether plaintiff's failure to exhaust his administrative remedies should be excused under the equitable rule established in *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004). *See* 374 Fed.Appx. 232, 233.

On June 17, 2010, this Court, finding the record to be incomplete regarding the facts bearing upon the exhaustion issue, directed the parties to file additional submissions concerning those facts. *See* Dkt. #39. Through their attorney, defendants responded on July 14, 2010. Dkt. #41. Plaintiff has now filed two affidavits (Dkt. #45, #46) addressing the exhaustion-related issues raised in the Court's June 17 order.

**FACTUAL BACKGROUND**

Plaintiff alleges that shortly after the alleged assault on April 9, while he was confined in the Special Housing Unit ("SHU") at Southport, he handed a five-page written grievance to a correction officer, to be sent to the Inmate Grievance Resolution Committee ("IGRC"). Plaintiff contends that the grievance was deliberately "lost" or destroyed after he gave it to the officer for mailing.

Plaintiff also alleges that he sent identical copies of the grievance to the DOCS Inspector General's Office, Prisoner's Legal Services of New York, and the Prison Rights Project of the Legal Aid Society. A copy of the grievance has been filed in this action, but it is not addressed to any particular party, other than the notations "C.C. file" and "C.C. Superintendent McGinnis" at the end. Dkt. #29 at 8.

In a letter dated May 5, 2004, and marked received on May 7, 2004, plaintiff wrote to the Superintendent of Southport "in regards of his grievance complaint that he submitted on 4-13-04, send copys to the following partie(s): P.L.S.; P.R.P.; and I.G's officer." Dkt. #24 at 24.[1] Those abbreviations apparently refer to the three entities referred to in the preceding paragraph. In that letter, plaintiff asked for an "officer to investigate 'as to why" if said grievance was submitted on 4-13-04, and we are now in May 4, 04 as to why, no one from the grievance committee ... has come

---

[1] The copy of the grievance that was electronically filed by defendants is missing a portion of the letter along the left-hand side. It appears possible that a word may be missing between the words "send" and "copys" in the portion quoted above.

to speak with my person or has given me notice that they have receive [sic] said complaint and/or are investigating my ... situation." *Id.*

In a response dated May 13, 2004, Inmate Grievance Program Supervisor J. Hale stated, "You ... state that you sent copies of your grievance to P.L.S., P.R.P., and the I.G.'s Office. However, you never submitted your complaint to this office." *Id.* at 28.

In a memo dated May 20, 2004, and stamped received on May 26, 2004, plaintiff replied to Hale, stating that plaintiff found it "ironic" that "on the same day [plaintiff] provided your office his complaint, while using the same mailing system" plaintiff sent copies of the grievance to three outside agencies, which "had no problem receiving a copy of said complaint." Dkt. #41 at 42. Plaintiff added, "You have failed to inform the undersigned if he needs to resubmit his complaint or by pass and go straight to Albany? Please inform." *Id.* There is no indication that plaintiff received a response.

In a memo dated May 12, 2004, and stamped received on May 20, 2004, plaintiff also wrote to Thomas Eagen, the Director of the Inmate Grievance Program in Albany, stating that he had "requested to know as to why his grievance as up to date [sic], has not been process [sic] or investigated," and that "said request has been to no avail." Dkt. #41 at 39. Plaintiff stated that he was "respectfully seeking [Eagen's] assistance to have his grievance complaint process and investigated." *Id.*

In a letter dated August 27, 2004, Eagen responded to plaintiff, although the text of Eagen's letter indicates that he was responding to correspondence from plaintiff dated July 28, 2004. *See* Dkt. #41 at 46. Eagen stated that DOCS records showed only one grievance filed by plaintiff while he was at Southport, which was unrelated to the April 9, 2004 incident. Eagen advised plaintiff to "contact the facility IGP Supervisor with your mitigating circumstances for not filing a grievance within the [appropriate] time frames ... ." *Id.*

In addition, defendants have filed a copy of a grievance by plaintiff dated July 28, 2004, and addressed to the Inmate Grievance Committee at Attica Correctional Facility, where plaintiff was

then housed. The grievance repeats plaintiff's allegations about the April 9 assault, also alleges that plaintiff filed a grievance on April 13, 2004, but that the "grievance complaints were never acknowledged ...," and that "the inmate grievance supervisor at South-Port ... deliberately obstructed [plaintiff's] inmate grievance complaints filed in relation to the incident." Dkt. #41 at 44. Plaintiff requested that his "inmate grievance be located and correctly processed ...," adding, "This is my every attempt to get these matters resolved through the inmate grievance program." *Id.* There is no indication of the outcome of that grievance.

It is not clear if this grievance is the July 28, 2004 correspondence referred to by Eagen. Curiously, Eagen's letter also states that "[t]here is no record of [plaintiff] filing a grievance on April 13, 2004, or one on July 28, 2004, as alleged" by plaintiff. Assuming that all those dates are correct, it appears that plaintiff may have written separately to Eagen on July 28, and referenced his grievance filed that same date. If so, it is not suprising that Eagen would have stated that there was no record of plaintiff having filed a grievance at Southport on July 28, 2004, since plaintiff was then at Attica, which is where his July 28 grievance was filed.

**DISCUSSION**

**I. Exhaustion under the PLRA**

The Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

To satisfy that requirement, prisoners in New York must follow the three-step DOCS grievance process. The first step in that process is the filing of a grievance with the IGRC. Next, the inmate may appeal an adverse decision to the prison superintendent. Finally, the inmate may

appeal the superintendent's decision to the CORC. *Brownell v. Krom*, 446 F.3d 305, 309 (2d Cir. 2006).

In general, it is only upon completion of all three of these levels of review that a prisoner may seek relief in federal court under § 1983. *Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002); *Campos v. Correction Officer Smith*, 418 F.Supp.2d 277, 278 (W.D.N.Y. 2006). The Second Circuit has explained that a prisoner's failure to exhaust may be excused, however, where: (1) administrative remedies were not in fact available; (2) prison officials have forfeited, or are estopped from raising, the affirmative defense of non-exhaustion; or (3) "special circumstances ... justify the prisoner's failure to comply with administrative procedural requirements." *Hemphill*, 380 F.3d at 686 (internal quotation marks omitted). As the Second Circuit has explained,

> [d]efendants may ... be estopped from raising non-exhaustion as an affirmative defense when prison officials inhibit an inmate's ability to utilize grievance procedures. Additionally, exhaustion may be achieved in situations where prison officials fail to timely advance the inmate's grievance or otherwise prevent him from seeking his administrative remedies, where claims are fully exhausted through other administrative procedures which were pursued for good reasons, or where defendants have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it.

*Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004) (citations omitted).

**II. Exhaustion in this Case**

Applying these principles here, I find that under the principles enunciated in *Hemphill*, "special circumstances" exist that justify plaintiff's failure to complete the normal three-step grievance process. Defendants' motion for summary judgment based on plaintiff's failure to exhaust his administrative remedies must therefore be denied.

DOCS regulations provide that after an inmate submits a grievance to the IGRC, "[t]he [grievance] clerk, together with the [IGRC] staff, shall schedule the [grievance] hearing to take place within 16 calendar days after receipt of the grievance." 7 N.Y.C.R.R. § 701.5(b)(2)(ii). The

regulations also provide that "matters not decided within the time limits may be appealed to the next step." 7 N.Y.C.R.R. § 701.6(g)(2).

When he did not get a timely response to his grievance from the IGRC, then, plaintiff could have appealed to the Superintendent. DOCS regulations provide that "[i]f the grievant ... wishes to appeal to the superintendent, he or she must complete and sign the appeal section on the IGRC response form (form #2131) and submit it to the grievance clerk within seven calendar days after receipt of the IGRC's written response." 7 N.Y.C.R.R. § 701.5(c)(1). If the inmate has not received a response from the IGRC, however, obviously there is no form #2131 for him to sign.

Plaintiff's May 5 letter to the Superintendent is not styled an appeal, but apparently it was construed as such by DOCS; Hale's response to plaintiff, in which Hale stated that plaintiff had "never submitted [his] complaint to this office," is captioned, "Re: Request for Appeal of Grievance Dated 5/5/04." Dkt.#45 at 11. Hale gave plaintiff no information or guidance about what steps plaintiff could or should have taken next to pursue his grievance. It would have made little sense for plaintiff to have attempted to appeal to CORC at that point, since CORC would presumably also have found that plaintiff had no grievance to appeal.[2]

In addition, Eagen's August 27 letter to plaintiff hardly made things any clearer. As noted, Eagen stated that plaintiff "filed only one grievance while housed at Southport," and that "[t]here [wa]s no record of [plaintiff] filing a grievance ... on July 28, 2004 ... ." Defendants themselves, however, have submitted a copy of the July 28, 2004 grievance filed by plaintiff at *Attica*, where he was then housed, and which is also where Eagen's letter was addressed to. That July 28 grievance, in my view, amounted to plaintiff's attempt to show "mitigating circumstances," as suggested by Eagen's letter.

---

[2]Plaintiff has also submitted a letter to him from an official with the Inmate Grievance Program dated October 15, 2010, stating that appeals to CORC must be submitted to the IGP Supervisor or IGRC, on forms supplied by the IGRC, and that "there is no provision [for inmates] to send them directly to Central Office." Dkt. #46 at 3.

Defendants have also argued that at his deposition, plaintiff admitted that after he had been informed by Hale that the IGRC had not received his grievance, plaintiff did not refile the grievance because, "since he had 'sent [his complaint] to everybody else,' he 'figured that the agencies will talk to each other.'" Letter from Martin A. Hotvet, Esq. to Second Circuit, Sept. 9, 2009.

That is not exactly what plaintiff said, or what the record shows happened, however. Plaintiff's deposition transcript reveals a somewhat confusing exchange at one point between defense counsel and plaintiff, concerning plaintiff's July 28, 2004 grievance that he filed at Attica, during which plaintiff seemed to agree that when he filed that grievance, he did not include a copy of his April 13 grievance that he allegedly filed at Southport. During that colloquy, defense counsel stated,

> So, you didn't send a copy to them because you had sent one to so many people, you figured that the agencies will talk to each other; is that it? Because, you sent one to the IG, you sent one to the superintendent, you sent one to the PLS. And, so, ... [w]hen Grievance sent you a letter saying that they didn't receive [the April 13 grievance], you didn't send them another copy, because you had given copies out to so many other agencies; is that correct?

Plaintiff responded, "Yes, sir." Dkt. #41 at 22.[3]

That does not show the kind of inaction on plaintiff's part suggested by defendants. Plaintiff did not testify that he sat on his hands after finding out that his grievance had not been received, simply because of an assumption that, in defense counsel's words, "the agencies will talk to each other," but only that he did not send a copy of the original grievance to the Attica IGRC. As the preceding recitation of the facts makes clear, plaintiff did in fact take a number of steps to attempt to obtain a decision on his grievance, and to the extent that he got any responses at all, they tended to be cursory and uninformative.

I conclude, therefore, that although plaintiff did not fully exhaust his formal administrative remedies, the facts here excuse that failure. It appears that plaintiff attempted to comply with the

---

[3]Counsel also appeared to suggest that plaintiff's failure to include a copy of the earlier grievance would explain why the Attica IGRC took no action on his July 28 grievance. *See* Dkt. #41 at 21 (opining that "the Grievance Committee may have just looked and said, he's saying that he sent it, but we don't have anything," and that "that would explain why the Grievance Committee wasn't acting on it").

formal grievance process, but that for whatever reason, his attempts were impeded at a number of steps along the way. Under these circumstances, the complaint is not subject to dismissal for failure to exhaust. *See Sandlin v. Poole*, 575 F.Supp.2d 484, 488 (W.D.N.Y. 2008); *Barad v. Comstock*, No. 03-CV-736, 2005 WL 1579794, at *8 (W.D.N.Y. June 30, 2005).

**III. Medical Claims**

Defendants have not sought summary judgment on the merits of plaintiff's assault claim. In their motion for summary judgment, however, defendants do contend that plaintiff's claims alleging a denial of medical treatment should be dismissed on the merits. This Court did not address that argument in its prior motion granting summary judgment for defendants.

While defendants correctly point out that the record indicates that plaintiff received medical attention following the alleged assault, plaintiff has not brought any claims against DOCS medical staff; the claims are all brought against the officers who allegedly carried out the assault. To the extent that plaintiff alleges that those officers prevented or attempted to prevent him from receiving medical treatment in the immediate aftermath of the alleged assault, those allegations are intertwined with plaintiff's assault claim, and defendants' motion for summary judgment as to the medical claims is denied.

## CONCLUSION

Defendants' motion for summary judgment (Dkt. #22) is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      January 5, 2011.